Ben Travis Everett, Sr. v. Commissioner. Glen A. King v. Commissioner. Glen A. King and wife, Kathleen King v. Commissioner. Ben Travis Everett, Sr., and wife, Annie Everett v. Commissioner.
Everett v. Commissioner
Docket Nos. 44014, 44015, 44025, 44026.
United States Tax Court
1954 Tax Ct. Memo LEXIS 298; 13 T.C.M. (CCH) 155; T.C.M. (RIA) 54055; February 17, 1954
*298 William Waller, Esq., American Trust Building, Nashville, Tenn., and Lawrence Dortch, Esq., for the petitioners. D. Z. Cauble, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined the following deficiencies in income tax: Docket
Petitioner
Year
Deficiency
No.
44014
Ben Travis Everett,
Sr.
1943
$15,558.03
1944
4,008.51
1945
5,072.82
1946
12,191.72
1947
11,570.49
44015
Glen A. King
1947
19,794.26
44025
Glen A. King and
wife, Kathleen
King
1943
28,153.10
1944
7,489.79
1945
7,879.67
1946
18,729.00
1948
11,349.07
44026
Ben Travis Everett,
Sr., and wife, Annie
Everett
1948
5,428.18
The sole issue is whether the partnership composed of Ben Travis Everett, Sr., and Glen A. King also included their respective children as partners. Findings of Fact Some of the facts are stipulated and are so found. Ben Travis Everett, Sr., and Annie Everett, husband and wife, reside at McKenzie, Tennessee. They filed separate individual returns for the years 1942 through 1947 and a joint return for 1948. Glen *299 A. King and Kathleen King, husband and wife, also reside at McKenzie, Tennessee. They filed joint returns for the years 1943 through 1946 and for 1948. Glen A. King filed a separate return for the year 1947. All of the above returns were filed with the collector of internal revenue for the district of Tennessee. Ben Travis Everett, Sr., and Glen A. King will sometimes hereinafter be referred to as the petitioners. Petitioners from 1923 through 1941 were partners in the wholesale grocery business, retail grocery business, and milling business. The wholesale grocery business was operated under the name of "Cash Economy Wholesale Grocery Company"; the retail business, "U-Tote-Em Grocery Company"; and the milling business, "Keco Milling Company". At the time of the hearing there were 35 grocery stores in the business; however, during some of the years before us, there were 41 stores in the business. Petitioners were equal partners and operated under an oral agreement. King served as sales and advertising manager while Everett did most of the buying. Prior to 1938 each received an annual salary of $3,000. In addition to the salary, there was a distribution of profits in the ratio of the *300 partners' capital accounts. However, in 1937, Everett, because of ill health, partially retired from the business and his salary was reduced to $2,400. Everett's salary remained at $2,400 through 1948 while King's salary was gradually increased so that in 1948 he received $10,152.10. Each of the petitioners has three children and the fathers planned that some day their children would take over the business. The three children of Ben Travis Everett, Sr., are: R. H. Freeman, a stepson; Ben Travis Everett, Jr., a son, and Sara Everett House, a daughter. Their ages in 1942 were, respectively, 37, 25 and 23. The three children of Glen A. King are: Adolph C. King, Jarrell V. King and Buford G. King. Their ages in 1942 were, respectively, 24, 22 and 16. In the early part of 1942 each father gave his children an interest in the partnership. Capital accounts were set up on the partnership books for each of the six children and each account was credited with $14,000; a corresponding debit amounting to $42,000 was made to each father's capital account. The balances in the capital accounts of each of the petitioners and the balances in the six capital accounts of each of the children for *301 the years before us were as follows: Petitioners
Children
(Two
(Six
accounts)
accounts)
December 31, 1941
$187,805.19
January 1, 1942
145,805.19
$14,000.00
December 31, 1942
158,601.73
21,210.88
December 31, 1943
171,339.86
30,370.72
December 31, 1944
171,339.86
30,370.72
December 31, 1945
171,339.86
30,370.72
December 31, 1946
206,882.86
36,670.72
December 31, 1947
218,882.86
40,670.72
December 31, 1948
249,315.00
45,970.00
The addition to the capital accounts for each year was based on a distribution of the net profit in the ratio of the parties' capital accounts. No salary was paid to the sons while they were in military service, or to the daughter. Additions were made to the personal accounts of the sons and daughter, but this money was used primarily for income tax payments. Sometime in 1942 Glen A. King happened to tell a lawyer, who did legal work for the partnership but was not on a retainer, of the new business arrangement. The lawyer advised him that written assignments to the children for their capital interests should be made. The lawyer was requested to and did prepare the documents. Each of the six assignments *302 was executed by Ben Travis Everett, Sr., and Glen A. King; none were dated but each was "effective as of January 1, 1942." On June 4, 1952, Glen A. King filed for the partnership an "Employer's Application for Identification Number", Form SS-4, under the Federal Insurance Contributions Act. One of the questions on the application asked if the applicant had previously filed, and, if the answer was "Yes", to give the reasons for the new application. Glen A. King answered, "Yes", and then explained, "To reflect addition of new partners." On the application each of the fathers and the six children were named as partners. A new identification number was issued on June 13, 1942. Petitioners filed gift tax returns as of March 15, 1943. These returns reflected gifts of partnership interests valued at $14,000 to each of their sons and daughter. The two fathers, their sons and daughter reported as income and paid tax on their distributive share of the partnership net income for the years before us. In addition, partnership returns were filed for the business for each of these years. In the year 1942 petitioners and R. H. Freeman were the only ones authorized to sign checks or employ or *303 discharge personnel. However, at a later date, sometime after 1946, the boys were authorized to make personnel changes. Sometimes petitioners were referred to as the "senior" partners, while the sons and daughter were referred to as "junior" partners. From January 1942 financial statements were prepared twice a year and distributed to petitioners and their sons and daughter. Copies of these statements were mailed to the boys while they were in military service. Because of the large inventory requirements, capital was important and necessary for the production of income from the business. There is no dispute concerning R. H. Freeman's relationship in the partnership. Respondent admits that he was a partner for the years before us. Respondent also admits that Adolph C. King and Ben Travis Everett, Jr., were partners in 1948. Adolph C. King, Jarrell V. King, Buford G. King and Ben Travis Everett, Jr., started working for the partnership in their early teens. They worked during vacations and on Saturdays because their fathers considered this work a necessary part of their early training. Up to the time of the hearing in 1953, except for the school periods and military service described *304 below, each of the boys has devoted his full time to the business. Each has a responsible position, and each contributes a vital service to the business. Ben Travis Everett, Jr., attended the University of Tennessee and was graduated from Bethel College in 1938 or 1939. While in school he took courses in business administration and bookkeeping. After he was graduated he worked for the partnership on a full-time basis. He worked in the office and also as manager of one of the stores. In the early part of 1942 he entered the Army and was discharged in 1946. For three or four months after his discharge, and while recuperating from military service, he worked on his father's farm. Thereafter, he again worked as manager of one of the stores. In May 1947 he became general superintendent of 20 stores and continued in that capacity throughout 1948. Sara Everett House was married to Dee House. She did not work for the partnership but from 1937, which was after her marriage, her husband has continuously worked for the partnership. The petitioners considered that Dee House represented her interest in the business. Adolph C. King attended Riverside Military Academy in Georgia and later *305 Vanderbilt University. While at Vanderbilt he received an appointment to the United States Naval Academy. In 1937 he entered the Naval Academy and was later graduated and commissioned. He was at Pearl Harbor when it was attacked and remained in the Navy on active duty until November 1946. Shortly before he was released from the Navy he took a correspondence course in bookkeeping. After his release he worked as assistant manager of the Jackson, Tennessee, store. Three months later he was promoted to manager of the store in Paris, Tennessee. He worked for the Paris store for three years and during this time he converted it into a supermarket. His salary on release from the Navy was in excess of $600 per month but his salary when he started working for the partnership, after his release from the Navy, was in the neighborhood of $35 a week. However, he also received a share of the net profits based on the ratio of the capital accounts. Jarrell V. King attended Vanderbilt University and majored in business economics. He was graduated in 1942. He entered the Army shortly after graduation and was discharged in 1946. Shortly after his release from service he attended a business university *306 at Bowling Green, Kentucky, to renew his accounting ability. He remained in school for nine months and then went to work in the partnership office as assistant office manager. Because he was dissatisfied with the office work he was transferred to the milling department. He started as assistant mill superientendent but within two or three months he was given full charge of the milling department. Mill receipts increased in 1947 and 1948. The parties attribute some of the increase to his management. In 1942 Buford G. King was 16 years old and in high school. About a year later he entered the Navy and was discharged in July 1946. After his release he worked two or three months as assistant store manager. He then enrolled at Vanderbilt University in September 1946 and was graduated in 1950. During vacations he worked in the business. Petitioners and their respective sons, R. H. Freeman, Ben Travis Everett, Jr., Adolph C. King, Jarrell V. King and Buford G. King, and daughter, Sara Everett House, formed a partnership among themselves for the purpose of operating the business formerly operated by the two petitioners. It was the intention of the petitioners and their sons and daughter *307 to join together in the beginning of 1942 in good faith for the purpose of carrying on a business and to share in the profits or losses. Opinion The issue is whether petitioners' sons and daughter may be recognized as valid members of the partnership in the years before us, 1942 through 1948. For these years R. H. Freeman was recognized by respondent as a partner and for 1948 respondent recognized Adolph C. King and Ben Travis Everett, Jr., as partners. There are many facts indicating the intention of the petitioners was to form a new partnership with their sons and daughter. The first and foremost of these facts was the gift of partnership capital which each of the fathers gave to his children. We think that there can be no doubt that there were valid gifts. The fathers testified as to the validity of the gifts and their intention to make them. The written assignments, the bookkeeping entries which properly recorded the transactions, the gift tax returns which were filed, and the distribution of partnership profits based on the gifts, indicate that the gifts were valid. Partnership intention was also manifested by the application for the social security identification number, *308 the partnership returns, and the payment of tax on the distributable share of each of the petitioners and their children. All of these actions were performed in the ordinary course of business, in good faith and without any evidence of sham or fraud. There is other evidence that indicates the bona fides of the petitioners' partnership intentions. The wives of petitioners and the spouses of the children were not included in the partnership arrangement. The fathers testified that they always wanted their children in the business and as proof of this the boys grew up in the business, worked in it on Saturdays and during summer vacations. Not only were the fathers' wishes that they wanted the children in the business a laudable parental trait, but it was also a very natural desire. See . The fact that the working partners received a salary and therefore participated in a more realistic distribution of partnership income supports the partnership intention more so than if the distribution was based solely on capital invested in the business. Further, there were no obstacles under state law which would preclude the business arrangement *309 from being a partnership. Respondent does not dispute the fact that R. H. Freeman was a partner during all of the years before us. Nor does he dispute the fact that Adolph C. King and Ben Travis Everett, Jr., were partners in 1948. It is significant that the partnership interest of each of these three arose, as did the interest of the other children, in 1942. The only differentiating element between respondent's admitted partners and his disallowed partners is the individual's contribution of services. According to the respondent, where services were rendered, there was a partner; where services were not rendered, there was not a partner. In this case we doubt the validity of such a distinction. Here capital was material, important and necessary for the successful operation of the business, and here each of the children had capital invested in the business from 1942 through 1948. See . On the other hand, there is evidence or its absence which respondent contends refutes the existence of a partnership between petitioners, their sons and daughter. We do not think the absence of a written partnership agreement very important. Furthermore, *310 many partnerships are based on verbal agreements. Here the petitioners operated their various enterprises as a partnership for approximately 18 years without a written agreement. The inactivity of the sons and daughter during the first four years in the matters of management and policy making in the business does not disprove the existence of a partnership. The inactivity of the boys was due to the fact that they were in service; however, as we said before, while their personal services were absent their capital was active in the business. The same can be said for Sara Everett House. The fact that Buford G. King was only 16 years old in 1942 causes some difficulty in recognizing him as a valid partner, but, like the others, his capital was also invested in the business. Even though he was a minor, we believe that he was adequately represented by his father, his natural guardian. There might have been some question, because he was a minor, as to his liability for partnership obligations. However, such a question would not control the intention of the parties to form a partnership. After a careful review of the record and the evidence as a whole, we find that each of the petitioners *311 and their sons and daughter contributed either services or capital, or both, in the formation of a partnership. Further, it is our opinion that each of the parties intended to join together in the present conduct of the business and that when they formed the partnership in January 1942 they acted in good faith with a valid business purpose. Because petitioners agreed to certain adjustments in the deficiency notices, a recomputation under Rule 50 is necessary. Decision will be entered under Rule 50.